No. 31,784

In Re Disbarment of H. F. Gorsuch

(78 P. 2d 12)

Opinion filed April 9, 1938.

*Clarence V. Beck,* attorney general, *Earl B. Swarner,* assistant attorney general, and *Fred Robertson,* of Kansas City, for complainant, state board of law examiners.

*A. M. Etchen,* of Kansas City, for the accused.

The opinion of the court was delivered by

Hutchison, J.: This is an original action in disbarment in this court commenced on January 4, 1934, by the state board of law examiners and the attorney general of the state of Kansas against H. F. Gorsuch, a member of the bar of this state, residing at that time in Kansas City, Wyandotte county, Kansas, charging him with violating his oath of office as an attorney at law and with conduct unbecoming a member of the legal profession, in eight accusations.

The accused first filed objections to the sufficiency of the accusations, which objections were overruled by this court. After that, and on the 19th of March, 1934, the accused filed a verified answer in the form of a general denial. The Hon. John L. Hunt was by this court appointed commissioner in the case to hear the evidence and make findings of fact and recommendations to this court in the premises. He heard the evidence and made findings of fact and recommendations supporting the findings in an able manner and with many authorities. The recommendations of the commissioner, which are advisory to this court, were that accusations one and three be sustained and the others be not sustained. The evidence heard by the commissioner has been abstracted and submitted to this court, together with briefs by the state board of law examiners and the

attorney general in support of the accusations and by counsel for the accused in his defense.

The evidence shows that prior to the filing of these accusations a grievance committee of the bar of Wyandotte county had a hearing as to the professional conduct of the accused, and evidence was introduced as to some of the same matters involved in these accusations, the local bar being represented by counsel and the accused being present in person and also being represented by counsel. The accused on that hearing testified at great length concerning several of the matters involved in these accusations. The secretary of the grievance committee and the stenographer who took the testimony and the oral proceedings in the hearing before the grievance committee testified before the commissioner as to the taking of the oral testimony and proceedings in shorthand and its being transcribed in typewriting, and the stenographer testified as to the correctness of the typewritten copy, after which the accusers offered it in evidence.

Serious questions are raised as to the competency of such evidence because it is not shown that the witnesses so testifying before the grievance committee were regularly sworn as witnesses or that such committee had power and authority to administer the oath or to direct the administering thereof. But the accused was present and made numerous admissions and explanations of the matters then and now under consideration, and there can be no question as to the competency of admissions then and there made by the accused or his failure to deny or modify statements made against him. (2 Wigmore on Evidence, 2d ed., §§ 1058, 1059.)

This matter is of particular importance because the accused did not appear in person nor testify in the hearing before the commissioner, although he was ably represented by counsel throughout that hearing and by brief before this court.

A further objection to the competency of the testimony taken by the grievance committee is because parts of it are apparently hearsay. However, any such parts can easily be eliminated and disregarded.

The first five accusations concern different phases of the same subject matter, namely, the collection and disposition of $1,250 from the Chicago, Milwaukee and St. Paul Railway Company on account of the death of Francisco Calderon, an employee of that road, on August 1, 1928. The sixth, seventh and eighth accusations are concerning three other separate matters.

The first accusation charged the accused with having on or about October 17, 1928, been guilty of moral turpitude and with having violated his oath of office and the duties imposed upon him as an attorney at law by representing to the public administrator of Wyandotte county and leading him to believe that Francisco Calderon was at the time of his death, about August 1, 1928, a resident of Wyandotte county, Kansas, and had left personal property in that county at the time of his death of the value of about $10, requiring immediate care and attention by an administrator, which false representations led the public administrator to make application to the probate court of said county for appointment as administrator of the estate of the deceased, whereas such representations were false and untrue in that Francisco Calderon was killed in Wisconsin and was not at the time of his death a resident of Wyandotte county and had no personal property whatever in Wyandotte county. There is an abundance of testimony showing the deceased was not a resident of Wyandotte county and had no personal property therein, and not a word of evidence to the contrary. In the brief of the accused the misrepresentations are attempted to be excused because the procedure brought about was the most effective and the least expensive. We know of no excuse that would justify a member of the bar in representing to a public officer that a deceased person was a resident of a certain county and had personal property therein at the time of his death when the attorney knew such statements were untrue.

The second accusation charged the accused with having caused and procured the appointment and qualification of the public administrator as administrator of the estate of Francisco Calderon so that the accused might bring about and effectuate a compromise of a damage claim for the alleged wrongful death of the deceased by the railway company while the deceased was in the employ of such company and thereby procure from the railway company, through such appointment by the probate court, the sum of $1,250, to the end that the accused might appropriate approximately one half thereof to his own use and benefit under the pretext that it was an attorney fee and that the accused did come into possession of the $1,250, less the fees of the court and public administrator, and that he at no time was the attorney of the public administrator. Whereby he embezzled and appropriated to his own use and benefit the sum of $577.80. We have difficulty in agreeing with the conclusion of the commissioner that the only part of this accusation which tends

to show improper action on the part of the accused was covered by the first accusation.

The first accusation contained nothing as to the purpose and design of the accused in making the false representations therein enumerated, nor did it contain any charge of his having obtained from and through such public administrator $1,250 to the end that he might appropriate nearly one half of it to his own use and benefit under the claim and pretext that it was an attorney fee. It is argued that because he was not the attorney employed by the public administrator, but was employed by the widow under a contract, he had a right to an attorney fee as from her. But he claimed employment by the public administrator in his testimony before the grievance committee, as the following questions and answers will indicate:

"Q. Did you hear Mr. Peterson [public administrator] just testify that he never hired you? A. I did.

"Q. Do you recall yourself testifying that he did hire you? A. Well, I know this, that I presented the matter to him and told him I could get this and wanted to know if it would be all right to go ahead, and he said yes, we would have to go before the court and get permission of the court, and in that way he did hire me. He never signed any written contract, but we had an oral agreement that I should go ahead and handle the .case for him as public administrator."

He unquestionably never was the attorney of the public administrator, but he claimed to be such, and continued to claim such authority at the time of the hearing before the grievance committee, which was long after he had acquired for his own use and benefit nearly one half of the $1,250 collected. That is the wrong with which he was charged in the second accusation, and he was not exonerated therefrom by later showing he had a contract for attorney fee with the widow.

The accusation is established by the admissions of the accused. No attorney can honorably pursue a course to his own advantage on the theory that he is representing one client, especially an officer, and later attempt to relieve himself from censure for such misconduct by showing that he represented another party. False colors in court, when made by a member of the bar under oath as an attorney and under the code of ethics, cannot be tolerated, especially when made for personal gain. We conclude that the second accusation includes charges in addition to those contained in the first, and those charges are sustained by the evidence and largely by the admissions of the accused.

The third accusation involved misrepresentations and untrue statements similar to those contained in the first, except that they were made later and concerned the children of the deceased. It charged that under the date of October 7, 1930, the accused filed and presented in and to the probate court his verified petition for appointment as guardian of the persons and estates of the three minor children of Francisco Calderon, deceased, they being of the ages of seven, five and two years. The petition stated that these children were residents of Wyandotte county, Kansas, on October 7, 1930, while he well knew that said children were citizens and residents of the Republic of Mexico; that such false representations to the probate judge were made to the end that the probate court would rely thereon and appoint him as the guardian of the children, and that the probate court did rely on such statements and did appoint him as guardian; that he took the oath of office and gave bond and continued to be such guardian, and that he did so to the end that he might obtain possession of some of the property belonging to said children and appropriate a portion thereof to his own use and benefit. There is no question about the statement that was made as to the residence of the children being untrue and that it was made by the accused to accomplish a purpose to his benefit. We concur in the recommendation of the commissioner in sustaining this charge.

The fourth accusation is too much like the second to justify a separate accusation. It outlined and charged the same financial matters, but in different language, and concluded with a charge that is substantially different from that in the second accusation, substituting for the charge of embezzling and appropriating to his own use and benefit the charge that the taking and applying such sum of $577.80 to his own use and purposes was unconscionable and wrong in that it constituted a grossly excessive charge and compensation for any services rendered. The charges are inconsistent and cannot both stand. We have sustained the second and therefore cannot sustain this one.

The fifth accusation charged the accused with representing to the court in applying for appointment as guardian for the three children that the value of their property was $300, whereas the value was $577.80, and that said misrepresentation was made by the accused so that he might embezzle and appropriate the difference to his own use and benefit; that very soon thereafter the sum of $577.80 came into his hands as such guardian, having been paid to

him by the administrator of the estate of Francisco Calderon, deceased, and immediately upon receipt of said sum the accused embezzled and converted to his own use approximately one half thereof. Along the same line of reasoning as we followed in sustaining the second accusation, we think this fifth accusation was supported not only by sufficient evidence but it must be sustained also as a charge of misappropriating money belonging to the children to the use of their guardian without any order of the probate court. It is urged, on the contrary, that through the power of attorney issued to Saturnino Calderon, who employed the accused as attorney for the widow and children to collect such damages from the railway company on the basis of a fifty percent attorney fee, the mother of the children authorized and gave the guardian the right to deduct such fee from the amount he received as guardian from the administrator. The widowed mother of the minor children may have had such authority to arrange by power of attorney for the employment of an attorney for her children and to agree upon the amount of compensation to be allowed, but when such attorney goes into court and is appointed guardian, he only pays out such sums as he is directed to pay by the probate court. No application of any kind was made to the probate court and no order of any kind was made by the probate court after the appointment of the guardian. It was a misappropriation of guardian funds to the use of the accused, and no claim of its being an attorney fee will help it without the approval and order of the probate court.

A few facts, and particularly dates, as shown by the abstract, will be informative as to the matters covered by these five accusations:

The petition for appointment of administrator of the deceased was made and filed on October 17, 1928.

On March 15, 1929, the administrator asked the court to amend the original petition by showing there were other heirs of the deceased besides the widow, namely, three children. This amendment was allowed and it showed that the widow resided in Mexico.

On March 25, 1929, the administrator received from the railway company $1,250.

The petition of the accused for appointment as guardian for the children was filed October 7, 1930.

On October 11, 1930, the administrator issued one check to the accused for $577.80, the other for the same amount, possibly earlier.

The accused testified that he paid one half of the money he re-

ceived as guardian to Saturnino Calderon, holding a power of attorney from the mother of the children, and has nothing left in the guardian fund. There was other testimony to the effect that the guardian had paid only $54 to the one having the power of attorney from the mother.

The sixth accusation charged the accused with failure to perform and discharge his duty as an attorney at law in a voluntary bankruptcy case where an adjudication in bankruptcy was declared, but the final discharge was delayed because of the failure of the accused to pay the necessary costs out of the funds paid him for that purpose and for his fee of $50. The referee in bankruptcy and his office clerk testified before the commissioner as to what the records showed and the conversations had with the .accused and the notices sent about the necessity of the payment of the balance of the costs. A part of the evidence taken by the grievance committee was that of the wife of the petitioner in bankruptcy and evidence of accused. But the wife of the debtor in bankruptcy later made an affidavit modifying, almost to the extent of contradicting, some of the most important statements formerly made by her, which, together with the evidence given on the subject by the accused, weakens the proof as to the charge of neglect of duty on the part of the accused so that we concur in the recommendation of the commissioner that the accusation is not sustained by the evidence.

The seventh accusation charged the accused with having offered a party $50 as a commission if he would induce a certain other party, a relative, to employ the accused as his attorney in certain litigation. The only evidence in support of the charge was by the wife of the party offered the commission, and she later made an affidavit to the effect that all she knew about the matter was hearsay and that was not from her husband. The accused positively denied making any such offer. Under these circumstances the accusation was not sustained.

The eighth accusation was a charge of neglect of duty as an attorney at law in a replevin action. Only one witness, the client himself, testified on this subject, and such testimony was given before the commissioner. His evidence showed some points accomplished by his attorney, the accused, and some lost, and a final losing of the case. No serious failure or neglect of duty of the attorney in handling the case was established.

We conclude by holding that the charges made in the first, second, third and fifth accusations are sustained and that they justify the disbarment of the accused, H. F. Gorsuch, from the practice of law in this state because of his moral turpitude, misappropriation of funds to his own use and benefit, breach of his oath as an attorney at law and violation of the code of ethics. He is therefore disbarred and his license to practice law in the state of Kansas is canceled.